**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| C&T CONSULTING GROUP, LLC d/b/a CTREN an Indiana limited liability company, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:23-cv-00017-TWP-CSW |
| STERILUMEN, INC a New York Corporation, | ) ) ) | |
| Defendant. | ) | |

**ENTRY ON DEFENDANT'S MOTION TO DISMISS THE**
**AMENDED COMPLAINT OR, IN THE ALTERNATIVE,**
**TRANSFER THE ACTION TO THE PROPER VENUE**

This matter is before the Court on Defendant SteriLumen, Inc.'s ("SteriLumen"), Motion

to Dismiss the Amended Complaint or, in the Alternative, Transfer the Action to the Proper Venue

(Filing No. 27).  On April 6, 2023, Plaintiff C&T Consulting Group, LLC ("CTREN") filed an

Amended Complaint alleging breach of contract, conversion, and unjust enrichment arising out of

SteriLumen's termination of a consulting and contractor services agreement between the parties

(Filing No. 24). SteriLumen contends this Court lacks personal jurisdiction and seeks dismissal of

the Amended Complaint or transfer to the District of Colorado under Federal Rules of Civil

Procedure 12(b)(2) and 12(b)(3).  For the following reasons, the Court finds transfer of this case

to the District of Colorado to be appropriate.  Accordingly, the Court **grants** the motion to transfer

and **denies as moot** the motion to dismiss.

**I.      BACKGROUND**

The following facts are not necessarily objectively true, but as required when reviewing a

motion to dismiss, the Court accepts as true all factual allegations in the Amended Complaint and

draws all inferences in favor of CTREN as the non-moving party. *See NBA Props., Inc. v.*

*HANWJH*, 46 F.4th 614, 620 (7th Cir. 2022), *cert. denied*, 143 S. Ct. 577, 214 L. Ed. 2d 341 (2023).  Further, "[t]he district court may consider affidavits on the issue of personal jurisdiction; both parties' affidavits are accepted as true, and where they conflict, the plaintiff is entitled to resolution in its favor."  *Id.*

**A.      Parties Enter into Agreement**

CTREN is an Indiana limited liability company that specializes in providing consulting services to companies for the purposes of selling and distributing their products. (Filing No. 24 at 1, 2).  Travis Hickey ("Hickey") and Chris Black ("Black") founded CTREN and remain its sole members. *Id.* at 2.

SteriLumen is a New York corporation which develops products for the purposes of killing pathogens, and among other services, manufactures and distributes an air purification technology known as Airocide.  *Id.* at 1, 2.  SteriLumen's principal place of business is in New York, and it has no facilities, employees, real property, or bank accounts in Indiana (Filing No. 28-1 at 2).  SteriLumen does not solicit business or advertise in Indiana, and only approximately 0.14% of its total sales have occurred in Indiana.  *Id.*

SteriLumen acquired the rights to manufacture and sell Airocide when it acquired substantially all of the assets of Akida Holdings, LLC ("Akida") in February 2021 (Filing No. 24 at 3).  At that time, Keith Frein ("Frein"), Akida's President and Chief Executive Officer, became Vice President of Sales at SteriLumen. *Id.*  CTREN had maintained a relationship with Frein since approximately 2018, and following SteriLumen's acquisition of Akida, CTREN contacted Frein and requested that he introduce them to SteriLumen's leadership (Filing No. 28-1 at 3; Filing No. 24 at 3).  In April 2021, Frein sent an email invitation to Hickey and Black for an introductory meeting with Q Saeed ("Saeed"), SteriLumen's then Chief Executive Officer, and Jim Doyle

("Doyle"), SteriLumen's then Chief Operating Officer (Filing No. 24 at 3).   The introductory meeting took place via a telephone call on May 4, 2021 (Filing No. 31-1 at 2).  Saeed and Doyle participated in the meeting from SteriLumen's Colorado office (Filing No. 24 at 3).

Between May and July 2021, CTREN and SteriLumen engaged in negotiations over CTREN providing consulting services to SteriLumen regarding Airocide sales and distribution. *Id.* at 3-4. During their negotiations, the parties conducted an unknown number of calls to each other via telephone or videoconferencing (Filing No. 31 at 2; Filing No. 28-1 at 5).  Hickey and Black participated in these calls from Indiana, and no SteriLumen employee traveled to Indiana either before or after negotiations were completed (Filing No. 24 at 4; Filing No. 28-1 at 5).

On July 26, 2021, CTREN and SteriLumen entered into an agreement (the "Agreement") for CTREN to provide consulting services to SteriLumen for which CTREN would receive $65,000.00 per month (Filing No. 24-1).  The Agreement was executed by CTREN in Indiana and by SteriLumen in Colorado (Filing No. 24 at 4; Filing No. 28-1 at 5).  The Agreement's terms allowed SteriLumen to terminate the Agreement "after the completion of Phase II, with one week's notice, at [SteriLumen's] sole discretion at any time on or before October 20, 2021, whichever is earlier" (Filing No. 24-1 at 4). The Agreement also allowed either party to terminate the Agreement upon a material breach not cured within twenty days of written notice. *Id.* The Agreement would otherwise terminate on its own accord on January 31, 2022, with no provision for automatic renewal. *Id.*

B.      **Interactions of the Parties During Term of the Agreement**

CTREN began providing services under the Agreement on July 26, 2021, from its Indiana office (Filing No. 24 at 5). Between August and September 2021, SteriLumen sent twenty demonstration Airocide units to CTREN in Millersburg, Indiana, and Evansville, Indiana. *Id.* at 4.

The demonstration units were not intended for sale by either party (Filing No. 28-1 at 6). In anticipation of future sales, SteriLumen manufactured a number of Airocide units and shipped them for storage in warehouses in Utah and Hong Kong. *Id.* Any units sold by CTREN would have been shipped directly to customers from SteriLumen's Utah warehouse. *Id.* SteriLumen made payments to CTREN's bank account held at Lake City Bank in Goshen, Indiana, on August 5, 2021, October 13, 2021, and October 29, 2021 (Filing No. 24 at 5).

On October 4, 2021, SteriLumen sent a draft of a long-term agreement to CTREN titled "Exclusive Contractor Agreement" (the "ECA") which, if agreed to, would bind the parties to a longer term (Filing No. 24 at 4; Filing No. 24-2). The draft ECA stated it would commence on the date it was signed and would continue until December 31, 2023, when it would automatically renew for successive one-year terms (Filing No. 24-2 at 7). The ECA also contained a Colorado choice-of-law provision and a forum-selection clause requiring the parties to bring any claims in Colorado. *Id.* at 10. The parties did not ultimately enter into the ECA (Filing No. 31 at 3).

In or near October 2021, SteriLumen grew dissatisfied with CTREN's performance and demanded a meeting with CTREN (Filing No. 28-1 at 7). The meeting was scheduled via six emails exchanged between October 15, and October 20, 2021. *Id.* at 22–37. The meeting took place on October 26, 2021, with SteriLumen representatives participating from Colorado and CTREN joining from Indiana. *Id.* at 8. Following the October 26, 2021 meeting, CTREN provided at least one further update to SteriLumen regarding its sales progress. *Id.* Unsatisfied with this update, SteriLumen terminated the Agreement on November 17, 2021 (Filing No. 24 at 5; Filing No. 28-1 at 8). In February 2022, SteriLumen filed suit against CTREN in Colorado state court for breach of contract. (Dkt. 24-2 ¶ 20). After discussions between counsel, SteriLumen agreed to dismiss that lawsuit for lack of personal jurisdiction. Id. ¶ 21

4

C. **The Instant Suit**

CTREN initiated this lawsuit on December 8, 2022, in Delaware County Superior Court, (Indiana), and it was removed to this Court on January 4, 2023 ([Filing No. 1](#)).  CTREN filed an Amended Complaint on April 6, 2023 ([Filing No. 24](#)).  CTREN contends in its Amended Complaint that SteriLumen improperly terminated the Agreement and currently owes CTREN $260,000.00 under the Agreement.  *Id.* at 5-6.  SteriLumen filed its Motion to Dismiss on April 20, 2023 ([Filing No. 27](#)).

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) requires dismissal of a claim where personal jurisdiction is lacking. When deciding a Rule 12(b)(2) motion, the court accepts all factual allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff if they weigh on personal jurisdiction. *Int'l Med. Grp., Inc. v. Am. Arb. Ass'n*, 149 F. Supp. 2d 615, 623 (S.D. Ind. 2001).  If the complaint, however, consists of conclusory allegations unsupported by factual allegations, the complaint fails the liberal standard of Rule 12(b).  *Id.*

The complaint does not need to include factual allegations concerning personal jurisdiction, but if the defendant moves to dismiss under Rule 12(b)(2), the plaintiff "bears the burden of demonstrating the existence of jurisdiction." *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).  The extent of a plaintiff's burden is dependent upon the method by which the court determines the issue of personal jurisdiction.  *Id.*  "When the . . . court holds an evidentiary hearing to determine [personal] jurisdiction, the plaintiff must establish [personal] jurisdiction by a preponderance of the evidence."  *Id.*  But where, as here, the court determines personal jurisdiction based only on reference to submissions of written materials, the plaintiff simply needs to make a prima facie case of personal jurisdiction.  *GCIU–Emp. Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009).

In determining whether the plaintiff has met the *prima facie* standard, the plaintiff is entitled to a favorable resolution of all disputed relevant facts. *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423–24 (7th Cir. 2010).  If the defendant has submitted evidence in opposition to the implementation of jurisdiction, however, "the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue*, 338 F.3d at 782–83. This evidence submitted by the defendant may include affidavits, unless the affidavits merely contain conclusory assertions that the court lacks personal jurisdiction over the defendant.  *Id.* at 783 n.13 (quoting *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002)).

### III.    DISCUSSION

Defendant SteriLumen seeks dismissal of this action pursuant to Rule 12(b)(2) for lack of personal jurisdiction and Rule 12(b)(3) for improper venue. In the alternative, SteriLumen argues this case should be transferred to Colorado because it does not have the sufficient minimum contacts with Indiana to provide this Court with jurisdiction required under the Due Process Clause of the Fourteenth Amendment. CTREN contends that Defendant is unable to meet its burden to establish that the Central District of Colorado is "clearly more convenient than the transferor forum." The Court will first discuss personal jurisdiction before turning to whether dismissal or transfer is appropriate.

### A.    Personal Jurisdiction

SteriLumen asks the Court to dismiss this suit under Rule 12(b)(2) for lack of personal jurisdiction (Filing No. 28 at 5). SteriLumen asserts that it does not have the requisite contacts with Indiana because it does not have any offices and only *de minimis* sales in Indiana. *Id.* CTREN initiated the relationship between the parties and nothing about the negotiations or course of

6

dealing between the parties created contacts between SteriLumen and Indiana sufficient to establish an Indiana-based court's jurisdiction. *Id.* at 6-7.

CTREN responds that SteriLumen did have minimum contacts with Indiana because it reached out to CTREN to initiate a business relationship, which was contemplated to be a long-term relationship (Filing No. 30 at 6). Further, the contacts between SteriLumen and Indiana were sufficient because they were purposeful and culminated in a contract with an Indiana-based business. *Id.* at 8-9. CTREN contends that it performed substantial work under the contract in Indiana, that it received payments from SteriLumen at an Indiana bank, and that SteriLumen sent demonstration units to CTREN at Indiana locations. *Id.* at 9-11.

"A district court sitting in diversity has personal jurisdiction over a nonresident defendant only if a court of the state in which it sits would have jurisdiction." *Purdue*, 338 F.3d at 779. To determine whether this Court has jurisdiction over SteriLumen, the Court first considers whether Indiana's long-arm statute and the federal constitution permit the exercise of jurisdiction. *Id.*; *see also Citadel Grp. Ltd. v. Washington Reg'l Med. Ctr.*, 536 F.3d 757, 760 (7th Cir. 2008). "Indiana Trial Rule 4.4(A)—Indiana's 'long-arm' rule for exercising personal jurisdiction over out-of-state defendants—permits exercising personal jurisdiction in any manner that is consistent with the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Oswald v. Shehadeh*, 108 N.E.3d 911, 916–17 (Ind. Ct. App. 2018). Whether personal jurisdiction is proper under Indiana's long-arm statute and the Due Process Clause therefore "collapses into a single search for what the outer limits of due process permit." *Hotmix & Bituminous Equip. Inc. v. Hardrock Equip. Corp.*, 719 N.E.2d 824, 827 (Ind. Ct. App. 1999).

Personal jurisdiction over an out-of-state defendant permitted by the Due Process Clause arises in two forms: general personal jurisdiction, which allows a court "to hear any and all claims

against [the out-of-state defendant] when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State," *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 317 (1945)), and specific jurisdiction which is "confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'"   *Id.*   The parties agree that SteriLumen is not subject to general jurisdiction in Indiana, and only specific jurisdiction is contested here (Filing No. 28 at 15; Filing No. 30 at 5 n.3).

For a forum state's courts to have specific personal jurisdiction, the defendant must have "certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014) (quoting *Int'l Shoe*, 326 U.S. at 316).  "The contacts needed for this kind of jurisdiction often go by the name 'purposeful availment.'"  *Spokane Kart Racing Ass'n v. Am. Kart Track Promoters Ass'n, Inc.*, 206 N.E.3d 462, 467 (Ind. Ct. App.), *transfer denied*, 212 N.E.3d 1230 (Ind. 2023) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

The United States Supreme Court instructed lower courts' analysis of the minimum contacts test in *Burger King*, 471 U.S. at 472.  In that case, the Supreme Court analyzed whether a Florida court could exercise specific personal jurisdiction over a Michigan-based defendant for claims alleging failure to make payments to a Florida corporation, Burger King, under a franchise agreement. *Id.* at 464. The Supreme Court held that "critical to due process analysis" is "foreseeability," specifically whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."  *Id.* at 474 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Further, the Supreme

Court held that an "individual's contract with an out-of-state party alone can[not] automatically establish sufficient minimum contacts in the other party's home forum," *id.* at 478, but noted that a lack of physical contacts with a state cannot defeat personal jurisdiction "[s]o long as a commercial actor's efforts are 'purposefully directed' toward residents of another State," *id.* at 476. The Supreme Court also instructed lower courts to evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . in determining whether the defendant purposefully established minimum contacts within the forum." *Id.* at 479. Contacts that are "'random,' 'fortuitous,' or 'attenuated'" are insufficient to establish a forum state's jurisdiction over a defendant. *Id.* at 475 (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984); *World-Wide Volkswagen*, 444 U.S. at 299).

Turning to the facts in *Burger King*, the Supreme Court found that the Florida court had specific personal jurisdiction over the Michigan defendant, emphasizing the following factors: (1) the defendant "'reach[ed] out beyond' Michigan and negotiated with a Florida corporation for the purchase of a long-term franchise and the manifold benefits that would derive from affiliation with a nationwide organization," *id.* at 479–80 (quoting *Travelers Health Ass'n v. Com. of Va. ex rel. State Corp. Comm'n*, 339 U.S. 643, 647 (1950)); (2) the twenty-year contract "envisioned continuing and wide-reaching contacts with Burger King in Florida," *id.* at 480; and (3) that "the parties' actual course of dealing repeatedly confirmed that decisionmaking authority was vested in [Burger King's] Miami headquarters," *id.*  The Supreme Court also noted that throughout various disputes that arose in their course of dealing, the parties "carried on a continuous course of direct communications by mail and by telephone," *id.* at 481, and that "[t]he contract documents themselves emphasize that Burger King's operations are conducted and supervised from the Miami

headquarters, that all relevant notices and payments must be sent there, and that the agreements were made in and enforced from Miami," *id.* at 480.

The Indiana Court of Appeals recently found that an Indiana court could exercise specific personal jurisdiction over out-of-state defendants in *Spokane Kart Racing*, 206 N.E.3d at 464.[1]  In *Spokane Kart Racing*, a number of Oregon- and Washington-based defendants contracted with the plaintiff, the American Kart Track Promoters Association, Inc ("AKTPA"), an Indiana corporation, for membership in AKTPA and for insurance issued by AKTPA.  *Id.*  The court noted that the case "involve[d] more than just a contract for insurance," and held that personal jurisdiction was appropriate despite a lack of the defendants' physical presence in Indiana because the defendants sought out a business relationship with AKTPA, included automatic renewal in their contract terms, received various forms and items from AKTPA in Indiana, sent payments to AKTPA in Indiana, corresponded with AKTPA nearly one hundred times, and returned reports to Indiana for AKTPA.  *Id.* at 469.

On the other hand, Indiana state and federal courts have found personal jurisdiction lacking where the contacts with Indiana are less extensive than those in *Burger King* or *Spokane Kart Racing*. In *Hotmix & Bituminous Equip. Inc. v. Hardrock Equip. Corp.*, the Indiana Court of Appeals held that the contacts between Indiana and defendant Hardrock, a New York corporation, were insufficient to support personal jurisdiction.  719 N.E.2d at 830.  The court found that the out-of-state corporation was "not generally engaged in business in Indiana, its agents did not come to Indiana to offer or negotiate an agreement, and its contacts with Indiana consisted solely of interstate mailings and telephone calls."  *Id.* at 828.  The court found it could not extend personal

---

[1] SteriLumen, in its briefing, urges the Court to decline to follow the Indiana Court of Appeals' opinion in *Spokane Kart Racing* because the defendants' petition to transfer to the Indiana Supreme Court in that case was pending at the time it submitted its briefing (*see* Filing No. 35 at 10). Since SteriLumen's reply brief was filed, however, transfer has been denied. *See Spokane Kart Racing Ass'n v. Am. Kart Track Promoters Ass'n, Inc.*, 212 N.E.3d 1230 (Ind. 2023).

jurisdiction to the defendant "[e]ven assuming that Hardrock was the party that initiated the contact." *Id.* The court further noted that personal jurisdiction was weakened by the fact that plaintiff performed services in Ohio rather than Indiana, as the dispute arose over the sale of equipment located in Ohio. *Id.* at 827–828.

In *Prolific, LLC v. Freedom Central Holdings, Inc.*, the court analyzed personal jurisdiction where the South Carolina defendant had no offices, employees, bank accounts, or real estate in Indiana, the defendant had never sold any goods or services in Indiana, and no employees entered Indiana for business purposes. No. 21-cv-02725, 2022 WL 2763234, at *1 (S.D. Ind. July 14, 2022). In that case, a South Carolina-based defendant had contacted the South Carolina subsidiary of an Indiana company. *Id.* at 2. The subsidiary then referred the defendant to its parent with which the defendant soon after entered into an agreement. *Id.* The Court found that personal jurisdiction was lacking because "all the important aspects of the parties' relationship occurred in South Carolina, [and] text messages and phone calls to Indiana cannot overcome their significance to establish purposeful availment." *Id.*

Here, the course of dealing between the parties demonstrates a lack of minimum contacts between SteriLumen and Indiana sufficient for this Court to exercise jurisdiction. The record contains evidence of only infrequent contact between SteriLumen and CTREN. While the existence of some contacts during the negotiation process between May and July 2021 is documented in the record, it is unknown how frequent these contacts were. The next contacts in the record took place in October and November 2021, consisting of a few emails and small number of meetings, and resulted in SteriLumen's termination of the contract. The number of contacts between SteriLumen and Indiana which CTREN has shown fall well short of the one hundred contacts between the parties in *Spokane Kart Racing* and the "continuous course of direct

communications" in *Burger King*.  Also, like in *Hotmix* and *Prolific*, all communications between the parties took place remotely, via telephone and videoconference. Such infrequent, remote contacts do not render it foreseeable that SteriLumen would be haled into court in Indiana. *Cf. Citadel*, 536 F.3d at 763 (finding sufficient minimum contacts where the plaintiff cited twenty-four contacts between the parties over mail, fax, telephone, and email; "[T]he formation of the contract alone is not sufficient to confer personal jurisdiction on WRMC. . . . At some point, a party's contacts must cross the threshold from offending due process to sufficient minimum contacts.").

Further, the Agreement called for a short-term relationship of just over six months, at most. This too falls short of demonstrating continuous obligations in Indiana that were shown by the automatic contract renewals in *Spokane Kart Racing* or the twenty-year contract in *Burger King*. Because the Agreement, by its own terms, created only short-term obligations between the parties even at its maximum length, SteriLumen could not have reasonably expected to be haled into court in Indiana.

CTREN argues that SteriLumen sending the ECA to CTREN demonstrates that SteriLumen contemplated future consequences and continuing obligations to CTREN in Indiana (Filing No. 30 at 9).  SteriLumen responds that the ECA is irrelevant because it was never agreed to and that, to the degree that it should be considered, it weighs against the exercise of personal jurisdiction because the proposed ECA contained Colorado choice of law and forum selection clauses (Filing No. 35 at 8).  On balance, the ECA does not favor either party.  The ECA does show that SteriLumen contemplated continuing obligations with relation to an Indiana business. *See Citadel*, 536 F.3d at 764 (finding a not yet finalized long-term agreement relevant in the court's personal jurisdiction analysis because it shows the parties "certainly contemplat[ed] that [a long-

term relationship] would exist").  However, the Colorado choice of law provision and a forum selection clause show SteriLumen envisioned a Colorado-based relationship.  Because of this conflict, the Court finds that the ECA does not weigh in either direction with regard to whether SteriLumen had minimal contacts with Indiana.

Additionally, SteriLumen's business conduct demonstrates that this Court's exercise of personal jurisdiction over SteriLumen would exceed the limits of the Due Process Clause. SteriLumen had no physical presence in Indiana. Like the plaintiffs in *Prolific* and *Hotmix*, SteriLumen has no employees based in the forum state, and no employees have entered Indiana for business purposes nor, importantly, for any negotiations or meetings with CTREN.  Also, like the plaintiffs in *Prolific*, SteriLumen does not have any offices in Indiana nor does it have any assets such as bank accounts or real estate in Indiana.  *See also Dura-Line Corp. v. Sloan*, 487 N.E.2d 469, 471 (Ind. Ct. App. 1986) (finding Indiana court lacked personal jurisdiction over defendant who contracted to sell plaintiff's products from her Indiana home; "[Plaintiff] is not generally engaged in business here.  Its agents did not come to Indiana to offer or negotiate an agreement. Its contact was initiated by [defendant] and consisted of interstate mailings and telephone calls.").

Further, SteriLumen did not direct its business towards Indiana. SteriLumen's sales in Indiana were negligible compared to its total sales (just 0.14%).  Moreover, though the parties dispute the scope of the work CTREN was contracted to perform, the work performed by CTREN in marketing Airocide was certainly not directed towards Indiana in particular.  SteriLumen asserts CTREN's work was directed centrally towards sales in larger states including New York, Pennsylvania, and California (Filing No. 28 at 14).  CTREN contends that the marketing was directed at the United States generally and not at any particular area of the country (Filing No. 31

at 2).   However, even resolving this dispute in favor of the non-moving party, the fact that CTREN's sales and marketing work did not target Indiana in particular supports the conclusion that SteriLumen did not target or direct its business towards Indiana residents.

CTREN next argues that, by sending the demonstration units to Indiana, SteriLumen conducted business through the state (Filing No. 30 at 10).   However, the demonstration units that were sent to Indiana were not intended for sales purposes (Filing No. 28-1 at 6).   They were instead intended to aid CTREN in its sales efforts.   *Id.*   SteriLumen's delivery of demonstration units to Indiana therefore was not for the purpose of doing business in Indiana and was merely a "random" or "attenuated" contact with Indiana.   *See Frontier Paper & Packaging, Inc. v. E & S Paper Co.*, No. 06-cv-1485, 2007 WL 1836884, at \*8–9 (S.D. Ind. June 22, 2007) (finding the shipment of a sample product into Indiana did not show that the defendant directed its activities to Indiana residents where the plaintiff solicited the samples).

Next, CTREN argues that SteriLumen initiated the relationship between the parties and thus "reached out" into Indiana and should be subject to its jurisdiction.   (Filing No. 30 at 10.) Initially, the Court notes that whether an out-of-state defendant solicited a relationship with an Indiana business is a relevant, though not dispositive, factor in determining whether personal jurisdiction is permitted.   *See Prolific*, 2022 WL 2763234, at \*2; *Heritage House Rests., Inc. v. Cont'l Funding Grp., Inc.*, 906 F.2d 276, 283–84 (7th Cir. 1990) (describing a determination of which party initiated a business transaction as "[o]ne relevant inquiry" and holding the defendant subject to personal jurisdiction in Illinois where the defendant "reached out to [an Illinois] corporation and created a continuing relationship or obligation" lasting "a year and a few months"). The evidence in the record here, however, demonstrates that SteriLumen did not "reach out" into Indiana.   Both parties presented affidavits regarding the introductory meeting that led to the parties'

business relationship.  CTREN asserts that because the meeting was scheduled through an emailed

invitation from Frein, SteriLumen's Vice President of Sales, SteriLumen was the party initiating

the transaction (Filing No. 31-1).  However, SteriLumen contends that CTREN had asked for the

introduction by first reaching out to Frein over the telephone (Filing No. 28-1 at 3).  CTREN has

not provided any evidence contesting this factual allegation.  Though the Court is obligated to

resolve disputes in favor of the non-moving party, the Court need not do so here, as the evidence

is undisputed that CTREN prompted the introductory meeting. CTREN's assertion that there

remains a factual dispute on this issue is thus conclusory and without basis in the factual record.

The Court finds that because CTREN initiated the introductory meeting that led to the contract

negotiations, SteriLumen did not "reach out" into Indiana to initiate the business relationship.

CTREN makes two further attempts to show minimum contacts between SteriLumen and

Indiana.  First, CTREN asserts that it performed services for SteriLumen from Indiana (Filing No.

30 at 9–10).  CTREN points to *Daniel J. Hartwig Associates, Inc. v. Kanner*, in which the Seventh

Circuit found that Wisconsin had personal jurisdiction over a Pennsylvania resident, "not[ing] that

[the plaintiff] performed a substantial amount of the contract in Wisconsin—a fact that [the

defendant] could have reasonably anticipated at the time he established a business relationship

with [the plaintiff]."  913 F.2d 1213, 1219 (7th Cir. 1990).   The Seventh Circuit held that

"[a]lthough not dispositive, the fact that a plaintiff performs a substantial amount of a contract in

the forum state constitutes another meaningful contact between the defendant and the forum."  *Id.*

However, the facts of *Hartwig* are easily distinguishable from the facts here.  In *Hartwig*, the out-

of-state defendant solicited the services of the forum state business and did so "on a number of

occasions, thus creating a continuing relationship between himself and a resident of the forum

state."  *Id.* at 1218.  The Seventh Circuit described these facts to be the "two significant factors

lead[ing] us to conclude that [the defendant] could reasonably foresee being subject to suit in a Wisconsin court." *Id.* As discussed above, SteriLumen neither initiated the parties' relationship nor created a continuing relationship between it and CTREN. The mere fact that CTREN performed work for SteriLumen in Indiana does not compel the Court to follow the holding in *Hartwig*. *See also Dura-Line Corp.*, 487 N.E.2d at 471 (finding defendant's performance of sales service from Indiana home did not confer jurisdiction over plaintiff; "The services performed for [plaintiff] by [defendant] were performed in Indiana only to the extent that she might telephone someone in another state from her Indiana home.").

Second, CTREN asserts that payments from SteriLumen were received at an Indiana bank (Filing No. 30 at 9-10). Though the courts in *Burger King* and *Spokane Kart Racing* noted that payments were sent by the defendants to the forum state, that factor was not dispositive. Those courts instead focused primarily on the "continuing obligations" between the parties, which are not present here. *Burger King*, 471 U.S. at 480; *Spokane Kart Racing*, 206 N.E.3d at 468; *cf. N. Grain Mktg.*, 743 F.3d at 489 (finding the minimum contacts test not met where the checks a defendant received from the plaintiff were drawn on a forum state bank). To the degree that SteriLumen making payment to CTREN in Indiana constitutes a contact with the forum state, the Court finds this to be a minor contact insufficient to render SteriLumen subject to Indiana courts' personal jurisdiction, even when considered with the other contacts CTREN has shown.

In sum, CTREN has shown very few contacts between the two parties, all of which occurred remotely and took place over the course of a short-term contract that SteriLumen did not solicit. SteriLumen's contacts with Indiana are insufficient for this Court to exercise personal jurisdiction over SteriLumen. Because CTREN has failed to show sufficient minimum contacts with Indiana, the Court need not reach the question of whether exercise of jurisdiction would

16

"offend[] 'traditional notions of fair play and substantial justice.'" *N. Grain Mktg.*, 743 F.3d at 496

(quoting *Int'l Shoe,* 326 U.S. at 316).

B.      **Transfer**

SteriLumen asks the Court to either dismiss the case because personal jurisdiction is

lacking or, alternatively, to transfer the action to the United States District Court for the District

of Colorado on *forum non conveniens* grounds or pursuant to 28 U.S.C. § 1404(a) and § 1406(a)

([Filing No. 28 at 5](#)).   First, however, the Court must *sua sponte* consider whether transfer is

appropriate under 28 U.S.C. § 1631.[2]  *North v. Ubiquity, Inc.*, 72 F.4th 221, 228 (7th Cir. 2023)

("[W]hen federal courts find that they lack jurisdiction, they bear an independent obligation under

§ 1631 to consider whether to transfer the case.").  § 1631 provides the following in relevant part:

> Whenever a civil action is filed . . . and [the] court finds that there is a want of
> jurisdiction, the court shall, if it is in the interest of justice, transfer such action or
> appeal to any other such court . . . in which the action or appeal could have been
> brought at the time it was filed or noticed.

A compelling reason for transfer exists where a claim would be time-barred if the plaintiff

were forced to file his claim anew in the correct venue.  *See North*, 72 F.4th at 228 (citing *Phillips*

*v. Seiter*, 173 F.3d 609, 610 (7th Cir. 1999)).  Conversely, where the claims are not barred and the

plaintiff may refile their case, transfer is not required by the interest of justice. *See id.* (quoting

*Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 133 (3d Cir. 2020)). Whether

transfer or dismissal is appropriate here turns on whether CTREN would be able to refile this case

in the District of Colorado or whether it would be time barred.

There are two bodies of law (and two statutes of limitations) which may be applied to the

instant matter, that of Indiana and Colorado. With regard to CTREN's conversion claim, ([Filing](#)

---

[2] Neither party suggests that jurisdiction or venue are improper in Colorado. CTREN opposes transfer but argues
that transfer is inappropriate only to the extent that Colorado is not a more convenient forum than Indiana. Further, it
does not contend that that dismissal is preferable to transfer to the District of Colorado (*see* [Filing No. 30 at 14-16](#)).

No. 24 at 6-7), the two states' statutes of limitations differ on the amount of time after which such a claim is barred.  Under Indiana law, a two-year statute of limitations applies to conversion claims, *see* Ind. Code § 34-11-2-4; however, Colorado law bars conversion claims after three or six years, *see* Colo. Rev. Stat. §§ 13-80-101, -103.5; *see also Curtis v. Counce*, 32 P.3d 585, 588–89 (Colo. App. 2001) (determining that three-year statute of limitations under § 13-80-101 applied to the plaintiff's conversion claim rather than the six-year time bar under an exception for certain conversion claims in § 13-80-103.5).

The Court cannot, with certainty, determine which body of law the District of Colorado would apply to CTREN's conversion claim.  If this Court was to dismiss this case rather than transfer and CTREN were to refile in the District of Colorado, the Colorado forum may apply Indiana law, barring CTREN's claim.  Dismissal is not appropriate and the Court declines to dismiss this action. Because the claim may be time-barred, the interest of justice requires transfer to the District of Colorado under § 1631.  *See North*, 72 F.4th at 228.

## IV.    CONCLUSION

For the reasons stated above, the Court concludes that it does not have personal jurisdiction over SteriLumen. As a result, the Court **TRANSFERS** this case to the District of Colorado, pursuant to 28 U.S.C. § 1631, and **DENIES as moot** SteriLumen's Motion to Dismiss (Filing No. 27).  **The Clerk is directed** to transfer this matter to the United States District Court for the District of Colorado.

**SO ORDERED.**

Date:    3/19/2024

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

18

DISTRIBUTION:

Angela Kelver Hall
FAEGRE DRINKER BIDDLE & REATH LLP (Indianapolis)
angela.hall@faegredrinker.com

Kathy Lynn Osborn
FAEGRE DRINKER BIDDLE & REATH LLP (Indianapolis)
kathy.osborn@faegredrinker.com

Maria Sofia Downham
FAEGRE DRINKER BIDDLE & REATH LLP
maria.downham@faegredrinker.com

George A. Gasper
ICE MILLER LLP (Indianapolis)
george.gasper@icemiller.com

Nicholas M. Menasche
DELBELLO DONNELLAN WEINGARTEN WISE & WIEDERKEHR, LLP
nmm@ddw-law.com

Samuel B. Gardner
ICE MILLER LLP (Indianapolis)
samuel.gardner@icemiller.com